WILMAN SOUTHER *v.* BETTIE SOUTHER.

May Term, 1930.

Present: POWERS. C. J., SLACK, MOULTON, and THOMPSON, JJ., and GRAHAM, Supr. J.

Opinion filed October 7, 1930.

*Pierce & Miles* for libelant.

*Walter H. Cleary* and *David E. Porter* for the libelee.

GRAHAM, Supr. J. This is a petition for a divorce alleging intolerable severity and adultery. The defendant also filed a petition for divorce against the plaintiff alleging intolerable severity. The cases were tried together at the September Term, 1928; findings of fact were filed, and judgment that both petitions be dismissed. The plaintiff brings this case before us on exceptions to the findings and to the judgment. The defendant filed no exceptions to the findings nor to the judgment dismissing her petition.

The parties were married in 1906, and have five children all of whom are self-supporting except the youngest child, who was eleven years old at the time of trial. The parties lived together as husband and wife on a farm in Lowell until the latter part of October, 1927, at which time the plaintiff left home, and they have not lived together since.

The findings show that the defendant's conduct of which the plaintiff complains consisted of her frequently absenting herself from home from one to three days at a time, leaving her husband and children, and without informing her husband where she was going, or when she was to return; visiting Canadian line houses; drinking intoxicating liquor to excess; and frequently associating with other men in the Lowell home and on trips to line houses, both in the daytime and in the nighttime. The findings also show that such conduct on the part of the defendant was a constant source of mental suffering to the plaintiff, which produced an injurious effect upon his health. The findings expressly state: ''The acts of the wife complained about we find amount to intolerable severity and that were it not for the conduct of the husband himself, he would be entitled to a divorce.'' There being no exceptions by the defendant, the only question before us on the record is whether the findings as to the conduct of the plaintiff, which are supported by evidence, constitute, as a matter of law, a bar in recrimination.

Only one exception to the findings need be noticed. The court found: ''The evidence also discloses that since he (the plaintiff) brought his petition for divorce he himself has been associating and keeping company with a woman other than his wife.'' This finding was excepted to as not warranted by the

evidence. The evidence discloses that within a few weeks of the time of trial a woman employed in Newport rode with the plaintiff in his automobile from Newport to Lowell and return three times for the purpose of visiting a relative. On two of these occasions when at Lowell, the plaintiff with his son, who was then fifteen years of age, this woman, and the daughter of her Lowell relative, started for Smugglers' Notch. The first time they had car trouble and turned around and returned to Lowell, and on the following Sunday all went to Smugglers' Notch. With only this evidence to support it, we think that this finding with its apparently intended implication of moral delinquency was unwarranted, and the exception is sustained.

Without this finding, the conduct of the plaintiff toward the defendant, as shown by the facts found, consisted of his horsewhipping his wife in a most inhuman way about six years before the trial, and on other occasions he used violence upon her by slapping and choking her, but there was no act of physical violence on his part for about two years prior to the time he left home. Until the fall of 1927, the parties had lived together as husband and wife on such occasions as the defendant was at home, and up to the time the plaintiff left home, the defendant intended to continue to live with him as his wife. The plaintiff was in a large measure responsible for some of the conduct of his wife. He took her and one of the children to Canadian line houses; he first taught her to drink intoxicating liquor, and attempted to teach one of the young boys to do the same thing. When she sought to satisfy her desire to go to the places where she got this sort of satisfaction, he resented it, and he showed the resentment upon his wife by harsh and abusive treatment; he was ugly about the home; he neglected his wife and family, and failed in some instances to provide sufficient and proper food and clothing; and he finally abandoned the home soon after his wife had recovered from a serious illness.

The conduct of the plaintiff toward his wife and family cannot be justified, but on the contrary is to be deplored and condemned. However, the vital question before us is whether the findings, without more, justify, as a matter of law, the dismissal of the petition which otherwise should have been granted.

In *Tillison* v. *Tillison*, 63 Vt. 411, 414, 22 Atl. 531, it is said that ''the doctrine of recrimination in divorce cases rests

upon the principle that a person shall not be permitted to complain of a breach of a contract which he has himself violated, or of any injury, when he is open to a charge of the same nature''; and that, ''proof of any statutory cause for divorce, uncondoned, is a complete defense * * * * *.'' In *McCannon* v. *McCannon*, 73 Vt. 147, 50 Atl. 799, this Court held: ''It is a well settled rule that, whether the divorce sought is from bed and board or from the bond of matrimony, no form of the petitioner's dereliction will afford a complete bar in recrimination unless it is such as the law has made ground for a divorce.''

■ The acts of physical violence here found were remote in point of time to the severance of the marital relations. The defendant continued to live with the plaintiff as his wife for about five years after the horsewhipping incident, and for about two years after the last of any act of physical violence, and up to the time the plaintiff left home, she intended to continue so to live with him. In the circumstances, these acts present no sufficient legal grounds for the denial. *Carr* v. *Carr*, 100 Vt. 65, 135 Atl. 5; *Adams* v. *Adams*, 102 Vt. 318, 148 Atl. 287.

The essential facts constituting ''intolerable severity'' have been definitely stated, and often repeated, in our cases. *Mathewson* v. *Mathewson*, 81 Vt. 173, 69 Atl. 646, 18 L. R. A. (N. S.) 300; *Whitehead* v. *Whitehead*, 84 Vt. 321, 79 Atl. 516; *Carr* v. *Carr*, 100 Vt. 65, 135 Atl. 5, and a restatement of them here is unnecessary. For present purposes, it is sufficient to inquire whether the misconduct of the plaintiff caused or threatened injury to the life, limb, or health of the defendant, either as a direct result of such misconduct, or produced by grief, worry, or mental distress occasioned thereby.

■■ Aside from the acts already otherwise disposed of, there is no finding or suggestion of any bodily harm to the defendant, either actual or threatened, or of any mental suffering, caused by the plaintiff's misconduct. The defendant insists that to sustain the judgment of the trial court, it is to be presumed, the contrary not appearing, that the court found the facts necessary to sustain it, and cites some of our cases where that principle has been applied. But the rule applicable here is that ''when the facts and circumstances are so decisive of actual or apprehended bodily harm resulting from mental suffering that there can be no difference of opinion about it, the court may take judicial notice thereof; otherwise, such essential

fact must be found in order to warrant a decree of divorce." *Mathewson* v. *Mathewson,* 81 Vt. 173, 182, 69 Atl. 646, 18 L. R. A. (N. S.) 300; *Whitehead* v. *Whitehead,* 84 Vt. 321, 322, 79 Atl. 516. The facts and circumstances reported are not of such decisive character as to take the case out of the general rule. Besides, the record discloses that the defendant requested the court to find that the plaintiff ''has himself been guilty of intolerable severity,'' which request, as already appears, was not complied with. In *McCannon* v. *McCannon, supra,* it was held that ''for want of finding that the petitioner's conduct was in fact * * * * * intolerable severity, no recrimination appears * * * * *.''

■ The defendant contends that the judgment of the court below should be upheld on the findings of neglect and refusal to support. These findings are: ''That he neglected her (the defendant) and the family, that he failed in some instances to provide sufficient and proper food and clothing, * * * and that he finally abandoned the home soon after the wife had recovered from a serious illness.'' This record does not establish that the plaintiff ''grossly, wantonly, and cruelly'' refused and neglected to provide suitable maintenance for the defendant as those qualifying terms are used in the statute, G. L. 3560, subdv. 5; *Caswell* v. *Caswell,* 66 Vt. 242, 28 Atl. 988; *Whitaker* v. *Whitaker,* 92 Vt. 301, 102 Atl. 1036; *Carr* v. *Carr, supra.* For want of such a finding no recrimination is shown. *McCannon* v. *McCannon, supra; Carr* v. *Carr, supra.*

It follows, that, on the facts found, the judgment dismissing the plaintiff's petition was erroneous, and the plaintiff's exception thereto must be sustained, but it does not follow that the plaintiff, as a matter of law, is entitled to a decree. In the exercise of our discretion in such cases, we shall remand the case for a rehearing and for express findings on the vital and substantive facts. *Canning* v. *Canning,* 88 Vt. 522, 93 Atl. 259; *Whitaker* v. *Whitaker,* 92 Vt. 301, 102 Atl. 1036.

The defendant has filed a petition in this Court for alimony and suit money, but in view of our disposition of the case these questions go back to the county court.

*Decree reversed, pro forma, and cause remanded for new trial.*