NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 46

No. 2019-361

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Criminal Division |
| | |
| Shannon Huston | April Term, 2020 |

Samuel Hoar, Jr., J.

Stacy L. Graczyk, Department of State's Attorneys and Sheriffs, Middlebury, for
  Plaintiff-Appellant.

Robert Kaplan and Laura J. Stiller of Kaplan and Kaplan, Burlington, for Defendant-Appellee.


PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.


¶ 1.     **CARROLL, J.**   In this civil license-suspension matter, the State appeals the trial court's decision holding that the arresting officer lacked reasonable suspicion to order defendant to exit her vehicle and, as a result, granting her motion to suppress and dismiss. We conclude that the court failed to make factual findings essential to resolving the issue before the court and reverse and remand for the trial court to do so.

¶ 2.     Defendant was stopped by a law-enforcement officer in July 2019 and received notice that the Department of Motor Vehicles (DMV) intended to suspend her license to operate a motor vehicle pursuant to 23 V.S.A § 1205(a)(1) (requiring DMV to suspend license of person who operates motor vehicle and refuses to submit to "test" when officer has reasonable grounds to

believe operator is under influence of alcohol or drugs and makes request for testing). Prior to a hearing on the notice of suspension, defendant filed a motion to suppress and dismiss. She argued that the officer did not have a reasonable suspicion that she was engaged in criminal activity because there was insufficient evidence to show that defendant was operating while under the influence of drugs. As a result, defendant argues the officer had no authority to ask her to exit her vehicle and any evidence gathered following this exit request should be suppressed and the case dismissed.[1]

¶ 3.     The court held a suppression hearing on September 11, 2019. During the hearing, Sergeant Paul Locke, the sole witness, testified in pertinent part as follows. He has been a law-enforcement officer for twenty-one years at the Milton Police Department and is a certified Drug Recognition Expert— one of approximately fifty-eight officers in the State of Vermont qualified by extensive training and proficiency testing to determine if a person is impaired by substances and what those substances might be. On June 30, 2019, while on West Milton Road, he noticed a vehicle traveling toward him at a high rate of speed which he estimated to be in excess of the posted speed limit. As the vehicle got closer, the operator flicked the headlights repeatedly from low to high beams. Sgt. Locke stopped the vehicle.

¶ 4.     Upon approaching the vehicle, Sgt. Locke smelled an extreme odor of burnt marijuana which he described as the strongest odor of marijuana he has confronted coming from a vehicle during his entire career. Defendant was the operator of the vehicle and its lone occupant. Sgt. Locke became concerned that defendant was impaired because, in his experience, speeding and driving with high beams activated are common signs of impairment. When Sgt. Locke asked defendant to provide her license, registration, and proof of insurance, she immediately handed over

---

[1] Defendant also challenged the legality of the officer's request that she perform field-sobriety tests and give an evidentiary sample of her breath. Because these issues were not reached by the trial court, we do not address them here.

her license and a temporary registration and then began looking for her insurance card. Sgt. Locke then engaged defendant in a conversation about her use of marijuana, in part to determine whether she could multitask by looking for the insurance card and conversing with him at the same time. An inability to do so can be "a factor in impairment" especially when using marijuana. Defendant stopped looking for her insurance card and told Sgt. Locke that she had not been using marijuana and had been the designated driver for friends that day. She then asked the officer, "[W]hat was I looking for again? What do you need?" Sgt. Locke determined defendant's inability to recall what she was doing was a sign of cognitive impairment caused by marijuana use.

¶ 5. While interacting with defendant, Sgt. Locke noted that her pupils were dilated and her eyes were watery and bloodshot in the corners. While Sgt. Locke recognized that dilated pupils are normal at night when a person's eyes are subjected to light, he noted that all of these signs are characteristic of someone under the influence of cannabis. Based upon these physical signs, the strong odor of burnt marijuana, and his interactions with defendant, Sgt. Locke formed the opinion that defendant was impaired by use of cannabis. He requested that defendant exit her vehicle.[2]

¶ 6. The court took the matter under advisement and made the following brief findings of fact in a written order following the suppression hearing. On June 30, 2019, Sgt. Locke stopped defendant for speeding. On approach to her vehicle, he noted a strong odor of burnt marijuana. Defendant was alone in the vehicle and Sgt. Locke suspected she had recently smoked marijuana. He asked defendant for her license, registration, and insurance card and inquired about marijuana use. Sgt. Locke " 'asked' " defendant to exit her vehicle. "[Defendant] exhibited no signs of impairment."

---

[2] Pursuant to 23 V.S.A. § 1205(j), the DUI processing form and Sgt. Locke's affidavit were both admitted into evidence. The portions of those documents that address the observations made by Sgt. Locke prior to asking defendant to exit her vehicle are consistent with his testimony and are not repeated here.

¶ 7.    Based on these findings, the court concluded that the odor of marijuana alone did not provide reasonable suspicion that a crime had been committed and, therefore, the exit order was unjustified according to State v. Sprague, 2003 VT 20, ¶ 16, 175 Vt. 123, 824 A.2d 539 (requiring officer to have reasonable suspicion that safety of officer, or others, is at risk or that crime has been committed prior to issuing exit order).  The court suppressed all evidence gathered after the exit order and, finding that, without it, there was no evidence that defendant was operating under the influence of drugs, entered judgment for defendant.  The State appealed.

¶ 8.    On appeal, the State does not dispute the trial court's legal conclusion that the odor of burnt marijuana alone did not provide the necessary reasonable suspicion to order defendant to exit her vehicle.  Rather, it argues that the court's finding that defendant exhibited no signs of impairment is not supported by the evidence and is clearly erroneous.  The State submits that the court failed to address Sgt. Locke's testimony and his opinion that defendant was impaired and that, if it had, it would have concluded that there was a reasonable suspicion that defendant was engaged in the crime of driving under the influence of a drug, justifying the exit request.  Defendant argues that the trial court properly evaluated and weighed Sgt. Locke's testimony but was not persuaded by it and, therefore, the finding at issue does not conflict with the evidence.[3]

¶ 9.    We have adopted a two-step approach for reviewing motions to suppress.  We apply a clear-error standard to the trial court's factual findings and review the legal conclusion de novo. State v. Lawrence, 2003 VT 68, ¶ 9, 175 Vt. 600, 834 A.2d 10 (mem.).

¶ 10.   When reviewing the trial court's findings, we apply the principle that the trial court is in the best position to determine the credibility of the evidence and witnesses before it and to then weigh that evidence.  Kanaan v. Kanaan, 163 Vt. 402, 405, 659 A.2d 128, 131 (1995)

---

[3]  Defendant does not dispute that if the officer had reasonable suspicion that defendant was driving while impaired it would have justified the exit request.  The sole issue on appeal is whether the court's finding that defendant exhibited no sign of impairment is supported by the evidence.

4

(explaining that this Court will not disturb trial court's finding unless clearly erroneous because it is in unique position to assess credibility of witnesses and weigh evidence). Determining credibility of witnesses and the weight of the evidence is within the sound discretion of the trial judge. In re A.F., 160 Vt. 175, 178, 624 A.2d 867, 869 (1993). Finally, the trial court "has the exclusive right to resolve conflicting testimony." Potwin v. Tucker, 126 Vt. 414, 418, 234 A.2d 430, 433 (1967).

¶ 11. While we recognize the trial court's discretion in analyzing and crediting the evidence, we expect and require that it fulfill that duty. The trial judge has a duty to make findings essential to the disposition of the issues properly before the court. See State v. Martin, 145 Vt. 562, 575, 496 A.2d 442, 451 (1985) ("[F]indings must state the facts essential to the disposition of the case."). "When judges act as triers of facts, they are bound to impartially and judicially weigh and sift the evidence, in order to find and state the facts relevant to the controversy established by the evidence." Mandigo v. Mandigo, 128 Vt. 446, 450, 266 A.2d 434, 436 (1970). The court must "consider[] all the evidence bearing on the issues with impartial patience and adequate reflection and then formulate[] the findings couched in its own language." Krupp v. Krupp, 126 Vt. 511, 513, 236 A.2d 653, 654-55 (1967). "[F]indings are desirable because they are helpful for appellate review." Jensen v. Jensen, 139 Vt. 551, 553, 433 A.2d 258, 259 (1981). "The findings must indicate to the parties and to this Court, if an appeal is taken, what was decided and how the decision was reached." In re J.R., 147 Vt. 7, 11, 508 A.2d 719, 721 (1986).

¶ 12. The State argues that the trial court's findings are erroneous. The real issue here, however, is that the trial court failed to make any findings on evidence which were essential to the disposition of an issue before the court. The State argued below that Sgt. Locke's exit request was based upon a reasonable suspicion that defendant was operating a motor vehicle while under the influence of a drug. Resolution of this factual issue was essential to the issue before the court. Sgt. Locke, the only witness at the suppression hearing, gave extensive testimony outlining his

5

credentials in detecting impairment, describing the factors which, in his training and experience, are signs of impairment, and explaining which of those signs were present in defendant's case. He testified that, in his opinion, defendant was impaired from the use of marijuana while operating her vehicle. Although defense counsel cross-examined Sgt. Locke, this evidence was largely unchallenged. The trial court failed to make even one finding from this testimony. Instead, the court found only that "[defendant] exhibited no signs of impairment." The lack of findings as to the substance of this testimony, the credibility assigned to it, and the weight the court chose to give it hampers our ability resolve the issue before us. It is not the function of this Court to reweigh evidence, but neither is it our responsibility to assess the evidence in the first instance. In re D.F., 2018 VT 132, ¶ 30, 209 Vt. 272, 204 A.3d 641 (affirming that Court's role is not to second-guess trial court or reweigh evidence).

¶ 13. We reject defendant's argument that the trial court considered Sgt. Locke's testimony and rejected it. There is no indication in the court's findings that it did so. Indeed, if the court had engaged in this analysis, it had the duty to articulate it. We are left to "speculate as to the basis upon which the trial court made its findings and reached its decision" which we will not do. Jensen, 139 Vt. at 553, 433 A.2d. at 260.

¶ 14. The matter is remanded to the trial court for it to make findings on the evidence that is essential to the disposition of the issue before it and to reconsider its conclusions if necessary.

Reversed and remanded.

FOR THE COURT:

_____
Associate Justice

6